IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ADOL T. OWEN-WILLIAMS, JR.** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 11-3354** |
| **CITY OF GAITHERSBURG, et al.** | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

This action is *pro se* Plaintiff Adol Owen-Williams's second against Defendants City of Gaithersburg, Maryland and Christopher Cyran, an officer on the Gaithersburg police force, for unlawful arrest and detention under 42 U.S.C. § 1983 and § 1981 and related state torts stemming from Owen-Williams's arrest on June 17, 2009. Owen-Williams filed his first suit on April 5, 2010, in which the Court subsequently ruled in favor of Defendants, dismissing Owen-Williams's state law claims and granting summary judgment as to his § 1983 and § 1981 claims. *See Owen-Williams v. City of Gaithersburg, Inc. et al.*, Civil No. PJM 10-185, 2011 WL 53082 (D. Md. Jan. 7, 2011) (hereinafter "*Owen-Williams I*"). Owen-Williams filed the instant Complaint on November 21, 2011. Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment [Paper No. 10], arguing that all the most recent claims are barred under the doctrine of *res judicata*. Owen-Williams has filed a Motion for Leave to Submit Amended Complaint [Paper No. 11]. For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**, their Motion to Dismiss is **MOOT**, and Owen-Williams's Motion for Leave to Submit Amended Complaint is **DENIED**.

Owen-Williams will be **ENJOINED** from filing any further suits against Defendants based on the events of June 17, 2009, or related events occurring thereafter.

**I.**

In the first case, *Owen-Williams I*, the Court found the following facts:

> On June 17, 2009 a dispute occurred between Owen-Williams and an individual named Baboucar Sallah. Officer Cyran and assisting units of the Gaithersburg police received reports that an auto theft was in progress and that there was a man with a firearm. When the officers arrived at Owen-Williams's address, Sallah told them that when he saw Owen-Williams driving a car which he had a court order to take legal possession of, he followed Owen-Williams until he pulled into his garage. He indicated that once he pulled into Owen-Williams' driveway and told him that a tow truck was coming to pick up the car, Owen-Williams threatened him with a handgun, stating that he would shoot Sallah if he got out of his car. The officers searched Owen-Williams' car and found a loaded 9mm handgun inside. Owen-Williams was thereupon arrested and taken into custody for processing.
>
> According to Owen-Williams, he explained to the arriving officer that he called the police because Sallah chased him home after threatening him, but that the officer was unwilling to listen to his account. Owen-Williams also alleges that the officer was verbally abusive and made several racist remarks about him. Once at the police station, Owen-Williams further stated that he was out driving when Sallah pulled up next to him, told him to pull over or that he would "shoot out" his windows, and when he did not pull over, Sallah proceeded to chase him home. Owen-Williams, however, admitted that once he got to his garage he exited the car, took out his gun, and told Sallah he would shoot him if he got out of the car. Owen-Williams claimed that [he] did this in self defense. Owen-Williams was subsequently charged with first degree assault and use of a handgun during a felony. The charges were eventually dismissed.
>
> Owen-Williams was released from custody on June 19, 2009. He alleges that on Monday July 13, 2010[1], Cyran called him at his home and asked why he had been making inquiries about the officers who had been at the scene of his arrest. Owen-Williams claims that Cyran threatened his life if he filed any complaints.

*Id.* at *1.

Owen-Williams's allegations in the present Complaint are essentially identical.  He says that on the morning of June 17, 2009, shortly after he drove his vehicle out of his garage, a car he had seen earlier began to follow him.  The car pulled alongside, and the driver, whom Owen-

---

[1] The correct date of the call, as stated in the Complaint in *Owen-Williams I*, is July 13, 2009.

Williams recognized as Baboucar Sallah,[2] began yelling and threatening to kill him. A high-speed chase ensued, during which Owen-Williams called 911 for help. Owen-Williams says he made it back to his garage, but before he could shut the door, Sallah forced the front end of his car inside. Seemingly trapped, Owen-Williams pulled out a gun and ordered Sallah to get back in his car. Sallah complied.

As it turns out, Sallah had also called 911, claiming that he was the rightful owner of the Mercedes-Benz and Harley-Davidson vehicles in Owen-Williams's garage. When the police arrived, Officer Cyran gave little credence to Owen-Williams's account of what had happened and directed purportedly racist insults at him. Officer Cyran then arrested Owen-Williams and placed him in the cramped back seat of a police car for approximately two hours, which allegedly caused him extreme anxiety and suffering. The police then entered Owen-Williams's house without his consent and arranged for the Mercedes-Benz and Harley-Davidson to be towed out of his garage without a court order. Officer Cyran also searched Owen-Williams's wallet and seized his concealed weapons carry permits for Maryland, Virginia and Florida, in addition to his Taurus 9mm firearm.

According to Owen-Williams, at the police station Officer Cyran prepared a sworn statement of charges that directly contradicted Owen-Williams's written account of events and falsely accused him of confessing to criminal conduct. Officer Cyran continued to harass Owen-Williams, making racially offensive comments and threatening both to give false testimony so he would "get locked up for good" and to take his house keys to a remote location just to "piss him off." Owen-Williams was finally released from custody on June 19. Owen-Williams was

---

[2] According to Owen-Williams, Sallah is a well-known criminal with a long history of fraud and theft. Owen-Williams says that at the time of the incident he thought Sallah was incarcerated for, among other things, stealing from him.

subsequently charged with two felonies, which carried a prison term of up to 45 years, but on July 17, 2009, the charges were dropped.

Owen-Williams also claims that on July 13, 2009 Officer Cyran called him at home and questioned him about inquiries he had made into the arrest, warning him about the consequences of filing any complaint. Fearing for his life because Cyran was "heavily armed" and "only a 3-5 minute car drive away," Owen-Williams hung up, left his home, and took refuge at another residence for several weeks.

As of the day he filed the instant suit, Owen-Williams alleges that none of his vehicles have been returned, notwithstanding two court orders directing the same. He further asserts that although his firearms were returned to him, he was compelled to surrender his gun permits to the police in exchange for obtaining a check he had left on the front seat of his Mercedes-Benz.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for

trial." *Id.* at 522 (alteration in original) (internal quotation marks and citation omitted). The mere existence of a "'scintilla of evidence'" is not enough to frustrate a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 187 (4th Cir. 1999)). Summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Although *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), they "must still set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002) (citations omitted).

### III.

Officer Cyran and the City of Gaithersburg argue that Owen-Williams's claims in the present action are barred by *res judicata*, also known as claim preclusion, because they are identical and arise from the same set of facts as those he unsuccessfully brought in *Owen-Williams I*. The doctrine of *res judicata* "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004)). A party asserting *res judicata* must establish: "'(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits.'" *Pension Benefit Guar. Corp. v. Beverly*, 404 F.3d 243, 248 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997)); *see also Anne Arundel County Bd. Of Educ. v. Norville*, 887 A.2d 1029, 1037-38 (2005) ("The elements of res judicata under federal law are analogous to those under Maryland law."). It is undisputed that

the parties in this case are identical to the parties in *Owen-Williams I*. At issue are the first and second elements.

### A.

For purposes of *res judicata*, "'summary judgment has always been considered a final disposition on the merits.'" *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1181 (4th Cir. 1989) (quoting *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 n.3 (4th Cir. 1984)). Similarly, dismissal in a previous suit "for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice." *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) (citations omitted).

In *Owen-Williams I*, this Court granted summary judgment in favor of Officer Cyran and the City of Gaithersburg as to Count I (violations of 42 U.S.C. § 1983 and § 1981). The Court addressed Owen-Williams's claims that Cyran had arrested him without a warrant and without probable cause, and it found that "the facts and circumstances within [Cyran]'s knowledge . . . were sufficient to warrant a prudent man in believing that [Owen-Williams] had committed or was committing an offense." *Owen-Williams I*, at *3. The Court relied on the undisputed facts that (1) the police arrived at the scene after Sallah called to report a car theft and a man with a gun; and (2) when they arrived they found that Owen-Williams was "brandish[ing] a handgun to keep Sallah at bay until the police arrived." These facts and circumstances alone, the Court concluded, were sufficient to warrant the belief that Owen-Williams had just attempted or was attempting to commit assault in the first degree and therefore "Cyran had probable cause to effectuate the arrest." *Id.* The Court further found that even if Owen-Williams's arrest was motivated by racism, his arrest would still have been lawful because the subjective intent of the arresting officer is immaterial. *Id.* With respect to the § 1981 claim, the Court determined that

the racial slurs Officer Cyran allegedly used were insufficient as a matter of law to make a prima facie case. The Court's grant of summary judgment plainly constitutes a "final disposition on the merits" of Owen-Williams's § 1983 and § 1981 claims arising from his arrest on June 17, 2009. *See Shoup*, 872 F.2d at 1181.

This Court in *Owen-Williams I* then proceeded to grant Defendant's Motion to Dismiss as to Counts II through VII, six common law claims for Unlawful Arrest and Detention, False Imprisonment, Malicious Prosecution, Abuse of Process, Assault, and Intentional Infliction of Emotional Distress. *Owen-Williams I*, at *4-5. The Court found that counties and municipalities possess immunity under Maryland law, and therefore dismissed all common law claims against Defendant City of Gaithersburg. *Id.* at *4. With respect to Officer Cyran, this Court found that, as a police officer, he enjoyed immunity from civil liability for actions performed within the scope of his employment, absent a showing of malice. Under this theory, the Court dismissed all counts arising from Owen-Williams's arrest, because given the presence of probable cause for the arrest, Owen-Williams could not show that Officer Cyran "intentionally performed an act without legal justification," a prerequisite for showing actual malice. As to Count VI, which asserted that Officer Cyran's threatening phone call to Owen-Williams on July 13 was an assault, the Court ruled that under Maryland tort law, "mere words [threatening a battery] are insufficient to constitute the tort of assault unless they are coupled with the present ability to fulfill them." Since Owen-Williams had failed to link the threatening words on the phone with any "apparent ability to carry out [the intention to inflict a battery]," he had failed to state a claim for assault upon which relief could be granted under Maryland law. *Id.* at *5. Dismissal of these counts in *Owen-Williams I* constitutes a final "judgment on the merits." *See McLean,* 566 F.3d at 396.

**B.**

For purposes of *res judicata*, identity of the causes of action in two suits is established when the suits and claims asserted "'arise out of the same transaction or series of transactions or the same core of operative facts,'" regardless of whether the claims asserted in both are identical. *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)). "'Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action,'" *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 162 (4th Cir. 2008) (quoting *Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003)), and the court need not inquire into whether the "the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986). It is undisputed that *Owen-Williams I* and the present action both arise out of Owen-Williams's arrest and detention between June 17 and June 19, 2009, and Cyran's alleged threats over the phone on July 13, 2009.[3] A comparison of the allegations set forth here and in *Owen-Williams I* shows that Counts II (False Imprisonment), III (Malicious Prosecution), IV (Abuse of Process) and VI (Intentional Infliction of Emotional Distress) in the present complaint are virtually identical to Counts III, IV, V and VII, respectively, in *Owen-Williams I*. *See Laurel Sand & Gravel, Inc.,* 519 F.3d at 162 ("To determine whether res judicata applies, we must compare the allegations set forth in [the previous case] with the allegations set forth in [the

---

[3] Owen-Williams also filed a Motion for Leave to File an Amended Complaint on May 11, 2011, asserting three new common law claims: Trover and Conversion, Replevin related to the loss of value of the two vehicles that were seized from his home when he was arrested, and Negligence. In light of the fundamental deficiencies of the original complaint already discussed, and the similar nature of the claims sought to be added, further amendment would be futile, and thus leave to amend is DENIED. *See In re PEC Solutions, Inc. Sec. Litig.,* 418 F.3d 379, 391 (4th Cir. 2005) (holding that leave to amend need not be given when amendment would be futile, failing to correct critical deficiencies that merited dismissal of the original complaint). That said, it might nevertheless be appropriate for the City of Gaithersburg, if it is indeed detaining the vehicles, to explain why in a written communication to Owen-Williams.

present complaint]."). Owen-Williams uses the exact same words, the only difference being that he added a request for damages in each count in this case.[4] Thus, the claims arise from the same nucleus of operative facts and not only *could* have been brought in the previous action, but were *actually* brought in the exact same terms.

Count I (False Arrest) in the present complaint is substantially identical to Count II (Unlawful Arrest and Detention) in *Owen-Williams I*. The core factual allegations are the same, although in this case Owen-Williams asserts that Cyran failed to properly assess the scene and gather relevant information from the parties before proceeding to arrest him. These re-labeled allegations are not enough to prevent application of *res judicata*. Even if Owen-Williams is presenting a "newly articulated" claim, the law "is well established that res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990). It is uncontroverted that the "new claim" here arises from the exact same nucleus of facts alleged in *Owen-Williams I* and, whether Plaintiff knew it or not, the "False Arrest" claim could have been brought in the earlier action. *See Harnett,* 800 F.2d at 1313.

Count V (Assault) in the present complaint is also substantially identical to Count VI (Assault) in *Owen-Williams I*. In both cases, Owen-Williams alleges that Officer Cyran's threatening telephone call on July 13, 2009 constitutes an "assault" under Maryland law. The only difference is that Owen-Williams now maintains that Cyran was only "3-5 minutes away" from Owen-Williams's home, that Cyran was heavily armed, and that Owen-Williams fled his residence and went into hiding for several weeks after he received the call. It is clear that these additional facts are part of the same nucleus of operative fact—Cyran's alleged threat—that this Court addressed in *Owen-Williams I*. Accordingly, the claim is barred by *res judicata*. *See*

---

[4] In *Owen-Williams I*, Plaintiff included his request for damages at the end of the complaint.

*Pueschel*, 369 F.3d at 355.  Even assuming Owen-Williams did not learn Cyran was close by and heavily armed until after dismissal of the first suit, "a party bound by [a] judgment cannot escape its effects by producing . . . new evidence in a subsequent action in support of the proposition decided against him." *Tait v. Western Maryland Ry. Co.*, 62 F.2d 933, 935 (4th Cir. 1933) (citations omitted).  Furthermore, the tort of assault requires proof that "the defendant's actions [raise] in the plaintiff's mind an apprehension of imminent bodily harm," *Lee v. Pfeifer*, 916 F. Supp. 501, 506 (D. Md. 1996), and any additional information Owen-Williams acquired after the fact would be irrelevant to establish that, at the time of the call, the threats raised in his mind such an apprehension.

In sum, Defendants have established all three elements of *res judicata* and are therefore entitled to judgment as a matter of law.

This clearly duplicative suit can only be seen as an abuse of the court process. Accordingly, Owen-Williams will be **ENJOINED** from filing any more suits against Defendants based on the events of June 17, 2009, or related events occurring thereafter.

### IV.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [Paper No. 10], finds Defendants' Motion to Dismiss **MOOT** [Paper No. 10], and **DENIES** Plaintiff's Motion for Leave to Submit Amended Complaint [Paper No. 11].  Final Judgment will be entered in favor of Defendants and the case will be **CLOSED**.

A separate Order will **ISSUE**.

                                                          /s/
                                       **PETER J. MESSITTE**
                         **UNITED STATES DISTRICT JUDGE**

**July 23, 2012**